# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

Gary Miller,

      Plaintiff

v.

Nye County et al.,

      Defendants

Case No.: 2:19-cv-00601-JAD-DJA

**Order Granting Motion to Dismiss with Limited Leave to Amend**

[ECF No. 18]

Plaintiff Gary Miller sues Nye County and one of its deputies under 42 U.S.C. § 1983 and various Nevada state laws for the fatal shooting of his dog, Blu. The County and Deputy Tolle move to dismiss three of Miller's claims and his request for punitive damages against the County. Because the County is statutorily immune from Miller's negligent-training claim and because Miller lacks the necessary relationship with Blu to establish a claim for negligent infliction of emotional distress, I grant the motion to dismiss those claims. And because the County cannot be held liable for punitive damages in a § 1983 action, I grant the County's motion to dismiss that request for relief. I also grant the County's motion to dismiss Miller's § 1983 claim against it because he failed to plead sufficient facts to state a plausible claim for relief under a theory of single-incident liability. But I give Miller leave to amend this claim if he can plausibly allege that the County has engaged in a pattern of similar conduct, or that the scenario in this case is likely to recur and that an officer who is ill-equipped to handle the scenario will likely commit a constitutional violation.[1]

---

[1] I deny Miller's request for oral argument on this motion because I find that this motion is suitable for disposition without oral argument. L.R. 78-1.

**Background**

In April 2017, Deputy John Tolle responded to a silent alarm that Miller accidently set off at his residence.[2]  Upon arriving at Miller's home, Deputy Tolle, with his gun drawn, encountered Blu—Miller's pet dog.[3]  When Blu approached Deputy Tolle, Miller claims that the officer quietly tried to quell Blu before shooting at him four times, hitting him twice in the head.[4]

Later, County officials met Deputy Tolle at the home, where Miller claims that Deputy Tolle spoke lightly of the situation—laughing and joking about the time off that he would receive for shooting Blu.[5]  A County animal-control officer then took Blu to the County animal shelter where his body was cremated after he died.[6]  Miller claims that, days later, the County returned the wrong pet's ashes to him.[7]  A few months passed before the County issued a press release about the shooting and cremation.[8]  In the release, the County stated that Deputy Tolle was given remedial training and that the County placed the employee who cremated Blu on leave pending an internal investigation.[9]

Miller then filed this suit against the County and Deputy Tolle, pleading four claims against both defendants: negligence under NRS 41.0336, intentional infliction of emotional distress, negligent infliction of emotional distress, and conversion.[10]  Miller also alleges claims

---

[2] ECF No. 16 at 6.

[3] *Id.* at 7.

[4] *Id.*

[5] *Id.* at 7–9.

[6] *Id.* at 10.

[7] *Id.*

[8] *Id.*

[9] *Id.*

[10] *Id.* at 14, 16–18.

for unreasonable seizure under § 1983 against Deputy Tolle;[11] and unreasonable seizure under *Monell v. Department of Social Services*, negligence under NRS 41.0337, and negligent training and supervision against the County.[12]  Miller seeks punitive damages for each claim.[13]

The defendants move to dismiss the § 1983 and negligent-training claims against the County, the claim for negligent infliction of emotional distress against all defendants, and Miller's request for punitive damages against the County.[14]  They do not challenge Miller's § 1983 claim against Deputy Tolle, or his claims for negligence, intentional infliction of emotional distress, or conversion.  The County argues that Miller failed to plead facts to establish that it had a policy of deliberate indifference to support the § 1983 claim against it; it is immune under NRS 41.032 for its training decisions; Miller cannot recover for negligent infliction of emotional distress because he lacks a familial relationship with Blu; and that punitive damages are not recoverable from a government entity.[15]  Miller contends that a series of post-incident facts establishes that the County inadequately trained Deputy Tolle; Deputy Tolle's training was operational and thus falls outside of NRS 41.032's protection; pet owners may recover for NIED because the pets are more than mere property; and punitive damages are recoverable from the County in the Ninth Circuit.[16]  I consider each argument in turn.

---

[11] *Id.* at 11–13.

[12] *Id.* at 13–16.

[13] *Id.* at 12–18.

[14] ECF No. 18.

[15] *Id.*

[16] ECF No. 21.

**Discussion**

**I.     Legal standard**

Federal Rule of Civil Procedure 8 requires every complaint to contain "[a] short and plain statement of the claim showing that the pleader is entitled to relief."[17]  While Rule 8 does not require detailed factual allegations, a properly pled claim must contain enough facts to "state a claim to relief that is plausible on its face" to survive a motion to dismiss.[18]  This "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"; the facts alleged must raise the claim "above the speculative level."[19]  In other words, a complaint must make direct or inferential allegations about "all the material elements necessary to sustain recovery under *some* viable legal theory."[20]

**II.     Miller's *Monell* claim fails to state a claim for which relief may be granted.**

     **A.     *Miller fails to allege sufficient facts to support single-incident liability.***

In his second claim for relief, Miller attempts to hold the County liable for Blu's death under *Monell v. Department of Social Services*.[21]  Generally, municipalities are not liable under § 1983 unless the "municipality *itself* causes the constitutional violation at issue."[22]  In *Monell*, the United States Supreme Court held that liability extends to a local government only when the constitutional violation was the result of its policy, practice, or custom, or a decision-making

---

[17] Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

[18] *Twombly*, 550 U.S. at 570.

[19] *Iqbal*, 556 U.S. at 678.

[20] *Twombly*, 550 U.S. at 562 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1989)) (emphasis in original).

[21] ECF No. 16 at 13.

[22] *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (emphasis in original).

official directed or ratified the complained-of conduct.[23]  Miller alleges that the County's failure to adequately train and supervise its employees caused his injury.[24]

To establish a claim for relief for failure to train or supervise, the plaintiff must show: "(1) that he possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy 'amounts to deliberate indifference' to the plaintiff's constitutional right; and (4) that the policy is the 'moving force behind the constitutional violation.'"[25]  "Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action."[26]  Plaintiffs can establish deliberate indifference by demonstrating that either "[a] pattern of similar constitutional violations by untrained employees" exists or "the unconstitutional consequences of failing to train" are "so patently obvious that a city could be liable . . . without proof of a pre-existing pattern of violations."[27]  The latter showing, called "single-incident liability," is "rare" and occurs only "in a narrow range of circumstances."[28]

The County argues that I should dismiss Miller's *Monell* claim because Miller has not pled facts establishing that the County had a policy amounting to deliberate indifference.[29] Miller responds that he has sufficiently alleged single-incident liability against the County by

---

[23] *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 690 (1978).

[24] ECF No. 16 at 13.

[25] *Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992) (quoting *City of Canton*, 489 U.S 378 at 389–91).

[26] *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (quotation omitted).

[27] *Id.* at 62–64 (quotation omitted).

[28] *Id.* at 63–64.

[29] ECF No. 18 at 6.

providing a series of post-incident facts that show "a deliberate indifference to its obvious need to train its deputies and other employees about interactions with dogs."[30]

The single-incident theory of municipal liability applies when the facts show an obvious need for specific legal training.  In *City of Canton v. Harris*, the "[Supreme] Court posed the hypothetical example of a city that arms its police force with firearms and deploys the armed officers into the public to capture fleeing felons without training the officers in the constitutional limitation on the use of deadly force."[31]  The High Court explained that the need to train officers about the constitutional limits on the use of deadly force in those circumstances "can be said to be 'so obvious' that the failure to do so could properly be characterized as 'deliberate indifference' to constitutional rights."[32]  Single-incident liability thus requires "[t]he likelihood that the situation will recur and the predictability that an officer lacking specific tools to handle that situation will violate citizens' rights."[33]  Miller has not sufficiently alleged either.

First, Miller makes no attempt to claim that the scenario here is likely to present itself again to County officers.  While it is possible that the County could know to a "moral certainty" that its officers may encounter a dog when responding to an alarm, Miller has not made any factual allegation that would suggest the situation is likely to recur.

Second, Miller offers nothing more than a conclusory allegation that an officer who lacks training to handle the scenario presented here would violate a plaintiff's constitutional rights.[34]

---

[30] ECF No. 21 at 9.

[31] *Connick*, 563 U.S. at 63 (citing *City of Canton*, 489 U.S. at 390 n.10).

[32] *City of Canton*, 489 U.S. at 390 n.10.

[33] *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S 397, 409 (1997).

[34] *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009) (holding that mere recitals of a claim's elements, supported by only conclusory statements, are insufficient to state a claim for relief).

Miller contends that the County's post-shooting actions show that the conduct "is systemic and pervasive," making it "likely and predictable that a citizen's rights would be violated" and ultimately showing that the "[C]ounty's training and supervision policy amounts to deliberate indifference."[35]  But as the United States Supreme Court noted in *Connick v. Thompson*, a plaintiff may not "rely on the utter lack of an ability to cope with the constitutional situations that underlies the *Canton* hypothetical" and instead "must assert that [officers] were not trained about . . . the specific scenario related to the violation."[36]  This requires a plaintiff to go beyond "showing merely that additional training would have been helpful in making difficult decisions"[37] because "[i]n every instance where a person has had his or her constitutional rights violated by a [municipal] employee, a § 1983 plaintiff will be able to point to something the [municipality] 'could have done' to prevent the unfortunate incident."[38]  Miller alleges just that—Deputy Tolle would not have required remedial training had his initial training been sufficient.  And while repugnant, an officer's nonchalant and flippant attitude following the shooting of a pet does not establish that the County's training reflected a deliberate indifference to the owner's constitutional rights.  Because Miller fails to allege a pattern of similar violations by the County's officers or a patently obvious unconstitutional consequence of liability, he failed to state a *Monell* claim against the County.

Defendants contend that I should deny Miller leave to amend because he has not properly requested that relief under the local rules.[39]  But Rule 15(a) of the Federal Rules of Civil

---

[35] ECF No. 21 at 10.

[36] *Connick*, 563 U.S. at 67.

[37] *Id.* at 68.

[38] *City of Canton*, 489 U.S. at 392.

[39] ECF No. 22 at 12.

7

Procedure states that "[t]he court should freely give leave when justice so requires."  The Ninth

Circuit has construed this rule broadly, requiring that leave to amend be granted with "extreme

liberality."[40]  Here, although Miller amended his complaint once already, he did not have the

benefit of the court's instructions and did so merely to correct a date in the initial complaint that

the defendants stipulated to.[41]  And because I cannot say for certain that Miller cannot plead the

facts required to state a § 1983 claim against the County, I grant him leave to try.  Miller must

allege facts that either establish a pattern of similar constitutional violations by County officers

that shows its training was insufficient or facts that show that the violations were likely to recur

based on inadequate training under the single-incident theory.

### B.   *Miller may not recover punitive damages from the County*.

While I grant Miller leave to amend his § 1983 claim against the County, he may not

include in that claim a request for punitive damages.  The United States Supreme Court in *City of

Newport v. Fact Concerts, Inc.* held that "a municipality is immune from punitive damages under

42 U.S.C. § 1983."[42]  The County relies on *Fact Concerts* to argue that Miller cannot seek

punitive damages from it.  Miller responds by pointing to the Ninth Circuit decision in *Larez v.

City of Los Angeles*, which he says considered "whether police brutality victims may recover

punitive damages against the City of Los Angeles."[43]

Not only does *Facts Concerts* settle the issue, but Miller mischaracterizes *Larez*.  There,

a jury awarded nominal damages to a plaintiff under § 1983 against the city and its chief of

---

[40] *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990) (citation omitted); *Poling v. Morgan*, 829 F.2d 882, 886 (9th Cir. 1987) (noting "the strong policy permitting amendment") (citation omitted).

[41] ECF No. 14 at 1.

[42] *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981).

[43] ECF No. 21 at 18.

police and awarded punitive damages only against the chief and other officers in their individual

capacities.[44]   In fact, the *Larez* court expressly stated that plaintiffs "could not seek punitive

damages against the City" as "a matter of law."[45]   Miller's citation to the Seventh Circuit

decision in *Erwin v. County of Manitowoc* is similarly unpersuasive because the *Erwin* jury

awarded punitive damages against *individuals*—not against the County.[46]   As the *Erwin* court

explained, "a *governmental body* such as the County cannot be held liable under 42 U.S.C.

§ 1983 for punitive damages" on a custom-or-policy claim.[47]   So because municipalities like the

County cannot be liable for punitive damages under § 1983, Miller in repleading this claim may

not seek punitive damages against the County.[48]

**III.      The County is statutorily immune from Miller's negligent-training claim.**

In his fifth claim for relief, Miller theorizes that the County is liable for negligent

training, supervision, and retention for "allowing Defendant Tolle to interact with members of

the public and their pet dogs without adequate training on the proper use of force against pet

dogs."[49]   The County argues that I should dismiss this claim because the choice to train its

officers to interact with pets is discretionary, rendering it immune from suit under NRS 41.032.[50]

---

[44] *Larez v. City of Los Angeles*, 946 F.2d 630, 639 (9th Cir. 1991).

[45] *Id.* at 640.

[46] *Erwin v. Cty. of Manitowoc*, 872 F.2d 1292, 1294 (7th Cir. 1989).

[47] *Id.* at 1299 (emphasis in original).

[48] The County moves to dismiss Miller's requests for punitive damages against the County arguing that "§ 1983 plaintiffs may not recover punitive damages against a municipality." *Id.* But of the seven claims against the County, only one is a § 1983 claim.  Because the County does not develop this argument with respect to the remaining claims, I do not now decide whether Miller can recover punitive damages against the County on his non-§ 1983 claims.

[49] ECF No. 16 at 15.

[50] ECF No. 18 at 8.

NRS 41.032 immunizes state officers, agencies, and political subdivisions from actions "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of the State or any of its agencies or political subdivisions . . . whether or not the discretion involved is abused."[51]  Nevada has adopted a two-part test to determine whether an act "fall[s] within the scope of [this] discretionary-act immunity."[52]  First, it must "involve an element of individual judgment or choice."[53]  Second, it must "be based on considerations of social, economic, or political policy."[54]  "[D]iscretionary decisions that fail to meet the second criterion of this test remain unprotected by NRS 41.032(2)'s discretionary-act immunity."[55]  The dispute between Miller and the County on this issue centers on the second element.

The County argues that appropriate-force and interactions-with-the-public trainings require "weighing the feasibility and effectiveness surrounding each policy based on their belief on necessity and community needs."[56]  Miller responds that training and supervision are operational functions, so the County does not enjoy immunity for those acts.[57]  But Miller misstates the law on this issue.

In *Martinez v. Maruszczak*, the Nevada Supreme Court adopted the two-part *Berkovitz-Gaubert* test to supersede earlier, irreconcilable tests—including the "planning-versus-

---

[51] Nev. Rev. Stat. 41.032(2).

[52] *Paulos v. FCH1, LLC*, 456 P.3d 589, 595 (Nev. 2020).

[53] *Martinez v. Maruszczak*, 168 P.3d 720, 729 (Nev. 2007).

[54] *Id.*

[55] *Id.*

[56] ECF No. 18 at 9.

[57] ECF No. 21 at 14.

operational test," which analyzed whether a decision was discretionary or operational.[58]  The

Court held that under the *Berkovitz-Gaubert* test, "decisions at all levels of government,

including frequent or routine decisions, may be protected by discretionary-act immunity, if the

decisions require analysis of government policy concerns."[59]  So while Nevada historically

evaluated a decision's operational nature, the test in *Martinez* now governs this issue and I

decline to follow the cases Miller cites because they rely on Nevada case law pre-dating its

adoption of the *Berkovitz-Gaubert* test.[60]

This case more appropriately tracks the Nevada Supreme Court's decision in *Clark*

*County School District v. Payo*.[61]  There, the Court applied the *Berkovitz-Gaubert* discretionary-

function test and determined that the school district was immune from suit because its "decisions

to add floor hockey as a unit of the physical education curriculum and to not provide safety

equipment" were "discretionary policy decisions" that "are made at a broad level" and "impact

how" teachers and coaches can do their jobs as state employees.[62]  The Court distinguished those

decisions from "the discretionary decisions based on each employee's choice and judgment"—

i.e., decisions that the coach "made in supervising his P.E. class, such as the choices regarding

---

[58] *Martinez*, 168 P.3d at 726–27.

[59] *Id.* at 729.

[60] ECF No. 21 at 12–13, 15 (citing *Taylor v. Las Vegas Metro. Police Dep't*, No. 2:19-cv-995, 2019 WL 5839255 (D. Nev. Nov. 7, 2019); *Wheeler v. City of Henderson*, No. 2:15-cv-1772, 2017 WL 2692405, at *4 (D. Nev. Jun. 22, 2017); *Perrin v. Genter*, 177 F. Supp. 2d 1115, 1125–26 (D. Nev. 2001)); *see Paulos v. FCH 1, LLC*, 456 P.3d 589, 596 n.3 (Nev. 2020) (noting that these cases "relied on pre-*Martinez* law").

[61] *Clark Cnty. Sch. Dist. v. Payo*, 403 P.3d 1270 (Nev. 2017) (en banc).

[62] *Id.* at 1277–78.

11

1  team size and game instruction[,]" which the Court explained "are not policy-based decisions

2  that are entitled to discretionary immunity."[63]

3       The County's alleged failure to implement "policies and procedures designed to prevent

4  wrongful acts by [its] employees," and its purportedly inadequate training of Deputy Tolle[64]

5  squarely meet both elements of the *Berkovitz-Gaubert* test.  First, as the Nevada Supreme Court

6  noted in *Paulos v. FCH1*, training decisions regarding officer conduct generally "involve an

7  element of choice."[65]  Second, these decisions involve "the evaluation of economic, social, and

8  political considerations"[66] because they involve determining whether the training policies are

9  sufficient to meet the community's needs.  Miller's allegations about the County's post-incident

10 order requiring Deputy Tolle to undergo remedial training does not affect this analysis because

11 Miller's negligent-training claim is based on Deputy Tolle's allegedly ineffective training *before*

12 he shot Blu—not the County's decisions *after*.  And although there are "certain acts . . . that do

13 not fall within the discretionary-function exemption" because they lack a connection to any

14 "plausible policy objectives,"[67] the level of training that a deputy receives about interactions with

15 pets is generally not one because it is susceptible to policy analysis and "involve[s] policy

16 judgements of the type Congress intended the discretionary[-]function exception to shield."[68]

17

18

---

19 [63] *Id.* at 1278.

   [64] ECF No. 16 at 15.

20 [65] *Paulos*, 456 P.3d at 596.

21 [66] *Payo*, 403 P.3d at 1277 (quoting *Gonzalez v. Univ. Sys. of New Hampshire*, No. 451217, 2005
   WL 530806, at *17 (Conn. Jan. 28, 2005)).

22 [67] *Martinez*, 168 P.3d at 728.

23 [68] *Paulos*, 456 P.3d at 596 (quoting *Vickers v. United States*, 228 F.3d 944, 950 (9th Cir. 2000));
   *accord Gonzalez v. Las Vegas Metro. Police Dep't*, No. 61120, 2013 WL 7158415, at *3 (Nev.
   Nov. 21, 2013).

1    In sum, the County's decisions about training its employees to use proper force against

2 pets is like the school district's decisions to amend its P.E. curriculum and not provide safety

3 equipment in *Payo*—not like a decision regarding team size and game instruction.  Thus, the

4 County is statutorily immune from Miller's fifth cause of action under Nevada law, and I dismiss

5 it.

6 **IV.    Miller cannot state an NIED claim on these facts.**

7    To recover for negligent infliction of emotional distress (NIED) in Nevada, a plaintiff

8 must, among other things, prove that he was "closely related to the victim."[69]  While I do not

9 doubt that Miller considered Blu to be one of his closest relatives, the Nevada Supreme Court

10 held in *Grotts v. Zahner* that "closely related" is limited to familial relationships established by

11 blood or marriage.[70]  "[A]ny non-family 'relationship' fails, as a matter of law, to qualify for

12 NIED standing."[71]  While *Grotts* did not involve an owner-pet relationship, its holding clearly

13 precludes Miller's Nevada-law NIED claim based on Blu's death and cremation.[72]

14    Miller cites a batch of cases from the Ninth Circuit, other federal districts, and various

15 state appellate courts for the proposition that a plaintiff may recover emotional damages for the

16 death of a pet under § 1983[73] or other state laws.[74]  But these cases do not affect or address

17

18 [69] *Grotts v. Zahner*, 989 P.2d 415, 416 (Nev. 1999).

19 [70] *Id.*

   [71] *Id.*

20 [72] *Id.* at 416.

21 [73] ECF No. 21 at 17 (citing *San Jose Charter of Hells Angels Motorcycle Club v. City of San Jose*, 402 F.3d 962 (9th Cir. 2005); *Moreno v. Hughes*, 157 F. Supp. 3d 687, 690 (E.D. Mich. 22 2016)).

23 [74] ECF No. 21 at 17 (citing *Knowles Animal Hosp., Inc. v. Wills*, 360 So.2d 37 (Fla. Dist. Ct. App. 1978); *Freeden v. Stride*, 525 P.2d 166 (Or. 1974); *City of Garland v. White*, 368 S.W. 2d 12 (Tex. Civ. App. 1963); *Lincecum v. Smith*, 287 So. 2d 625, 627 (La. Ct. App. 1973)).

Nevada NIED law, which is clear on this issue.  And while a party might recover emotional-distress *damages* under § 1983 or other causes of action, that does not mean that Miller can state a Nevada-law NIED claim for his pet's death.  Because Miller cannot state a plausible claim for negligent infliction of emotional distress for the death of a pet, I dismiss this claim against all defendants with prejudice.

**Conclusion**

Accordingly, IT IS HEREBY ORDERED that Defendants' motion to dismiss **[ECF No. 18] is GRANTED**.  Miller's second cause of action (*Monell* liability against the County) is dismissed with leave to amend.  Miller's request for punitive damages from the County under § 1983, and his fifth and seventh causes of action are dismissed with prejudice.  **Miller has until October 12, 2020, to file an amended complaint consistent with this order**.  If he fails to do so, Miller's § 1983 claim against the County will be deemed abandoned and dismissed with prejudice, and this case will then proceed on Miller's unchallenged claims against both defendants for negligence under NRS 41.0336, intentional infliction of emotional distress, and conversion; Miller's § 1983 claim against Deputy Tolle; and his negligence claim against the County under NRS 41.0337.

_____
U.S. District Judge Jennifer A. Dorsey
September 22, 2020